UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-33-P-S |
| | ) | |
| ROSS S. WHEATON, | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |

### RECOMMENDED DECISION ON MOTION
### TO DISMISS THIRD-PARTY PETITION

On May 18, 2005 criminal defendant Ross Wheaton pled guilty to a one-count information charging him with conspiracy to distribute, and possess with intent to distribute, fifty kilograms or more of marijuana between the summer of 2001 and April 30, 2003, in violation of 21 U.S.C. §§ 846 and 841(a)(1). *See* Information (Docket No. 2); Preliminary Order of Forfeiture ("Preliminary Order") (Docket No. 8) at 3. As part of his plea he agreed, *inter alia*, to forfeit to the government his interest in a property known as 4 Wheaton Way, described in the government's Prosecution Version as consisting of approximately 181 acres of land located at 4 Wheaton Way in Standish, Maine. *See* Prosecution Version (Docket No. 3); Preliminary Order at 3. On the same day, the court entered a preliminary order of forfeiture directing that the government publish notice advising, *inter alia*, that any person, other than the defendant, having or claiming a legal interest in the properties to be forfeited file a petition with the court within a prescribed time period. *See* Preliminary Order at 5. On July 28, 2005 Rhonda Millett filed a petition claiming a legal interest in the 4 Wheaton Way property. *See* Third-Party Claim of Rhonda Millett Filed Pursuant to Rule 32.2(c) of the Federal Rules of Criminal

Procedure, etc. ("Petition") (Docket No. 30).[1]  The government now moves pursuant to Federal Rule of Criminal Procedure 32.2(c)(1)(A) to dismiss Millett's claim for lack of standing.  *See* Motion To Dismiss Petition of Rhonda Millett for Lack of Standing, etc. ("Motion") (Docket No. 20) at 1.  For the reasons that follow, I recommend that the motion be granted.

## I. Applicable Legal Standards

"The government, through forfeiture, simply steps into the defendant's shoes." *County of Oakland v. Vista Disposal, Inc.*, 826 F. Supp. 218, 224 (E.D. Mich. 1993).  "Thus, the government can acquire through forfeiture no greater interest than the defendant held at the time the defendant committed the criminal acts." *Id*.  "When property is ordered forfeited pursuant to the criminal forfeiture provisions of the United States Code, 21 U.S.C. § 853, third parties, i.e., persons other than the defendant, who claim to have legal interests in the forfeited property may petition the court for a hearing to adjudicate the validity of their claimed interests." *United States v. Strube*, 58 F.Supp.2d 576, 579 (M.D. Pa. 1999); *see also* 21 U.S.C. § 853(n) (pertaining to third-party interests in criminal-forfeiture context).

Federal Rule of Criminal Procedure 32.2(c)(1) sets forth the procedure for adjudicating such petitions, stating, in relevant part:

> (**1**) **In General**.  If, as prescribed by statute, a third party files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding, but no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment.
>
> (**A**)  In the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason.  For purposes of the motion, the facts set forth in the petition are assumed to be true.

---

[1] The Petition originally was filed as Docket No. 17; however, I directed that it be refiled with proper electronic signatures.  *See* Docket No. 28.

> (**B**) After disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure . . . .

Fed. R. Crim. P. 32.2(c)(1).

As Rule 32.2(c)(1) contemplates, "a party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate an interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture." *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in U.S. Currency*, 661 F.2d 319, 326 (5th Cir. 1981) (footnote omitted). Standing in forfeiture cases has "both constitutional and statutory aspects." *United States v. One-Sixth Share of James J. Bulger in All Present & Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 40 (1st Cir. 2003). "As to constitutional standing, [i]t is well established that a party seeking to challenge a forfeiture of property must first demonstrate an ownership or possessory interest in the seized property in order to have standing to contest the forfeiture." *Id*. at 41 (citation and internal quotation marks omitted). However, "[a]t the initial stage of intervention, the requirements for a claimant to demonstrate constitutional standing are very forgiving. In general, any colorable claim on the defendant property suffices." *Id*.

In the criminal-forfeiture context, to establish statutory standing a petitioner must demonstrate that:

> **(A)** the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> **(B)** the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]

21 U.S.C. § 853(n)(6); *see also, e.g., United States v. Perkins*, No. CR-05-24-B-W, 2005 WL 1595287 (D. Me. July 6, 2005) (describing section 853(n)(6) as "in essence, a standing requirement").

If a party seeking relief pursuant to section 853(n)(6) fails to allege all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without a hearing. *See* Fed. R. Crim. P. 32.2(c)(1); *see also, e.g., Strube*, 58 F. Supp.2d at 579; *United States v. East Carroll Corr. Sys., Inc.*, 14 F. Supp.2d 851, 853 (W.D. La. 1998); *United States v. BCCI Holdings (Luxembourg), S.A.*, 919 F. Supp. 31, 36 (D.D.C. 1996).

## II. Factual Context

In accordance with Rule 32.2(c)(1), for purposes of adjudication of the instant motion I assume as true the following facts contained in Millett's petition:

Millett is a 51-year-old school teacher. Petition at 2. She was married in her early 20s and, at age 24, widowed when her husband was killed in an automobile accident. *Id*. Subsequently, in 1988, she met Wheaton. *Id*. In 1991 Millett and Wheaton cohabited in a house in Bangor, Maine, that they purchased by pooling their assets. *Id*. In substance, a partnership was formed by the two individuals to hold property. *Id*. The property was titled in Millett's name but was, from the date of purchase through the date of sale, treated as joint property. *Id*.

In 1996 Millett understood that Wheaton, as a business transaction, obtained a property in Standish, Maine. *Id*. She was not involved in obtaining the land and was not aware of the extent of the property. *Id*. at 2-3. At the time, she was advised that because of the financial difficulties of a customer for whom Wheaton had built a metal building, Wheaton had come into possession of the building and some land. *Id*. at 3. During 1996 and 1997 Millett continued to reside in the house in Bangor with Wheaton, who was there mainly on weekends. *Id*.

In 1997 Millett was hired as a teacher in Saco. *Id*. She left Bangor and rented a house in Old Orchard Beach for the winter, where she resided with Wheaton. *Id*. They rented out the house in Bangor in 1997 and used the rental payments to pay expenses associated with the Bangor property. *Id*. On or about March 1, 2000 the house in Bangor was sold for $100,000. Millett and Wheaton divided the proceeds, less all legal fees, sales commissions and the mortgage balance. *Id*.

In April 1998 Millett and Wheaton vacated the rental they had in Old Orchard Beach and moved into a portion of the metal warehouse/shop Wheaton had built that was located on part of the land he had acquired in 1996. *Id*. Millett and Wheaton lived there until spring 1999. *Id*. In fall 1997 they began constructing a residence approximately one-quarter mile from the metal warehouse/shop, commencing with the installation of a foundation. *Id*. The metal warehouse had various sections. *Id*. One section was used as a rough residence and garage for personal and business tools and vehicles. *Id*. Another section, separated by a petition, was used for storage. *Id*. A third portion of the building was separately petitioned and locked. *Id*. at 3-4. Millett was informed that a third party had rented this section for storage. *Id*. at 4. She never entered this locked portion of the warehouse/shop. *Id*.

At various times during construction of the house, Wheaton told Millett his business was generating limited income. *Id*. Millett used her share of the proceeds from sale of the house in Bangor, her savings, her income and money borrowed from her retirement accounts to fund the specific purchases of materials used to build and outfit the residence. *Id*. A five-acre parcel of land was separated from the large number of acres for the purpose of being the site for a residence for Wheaton and Millett. *Id*. Wheaton supplied some labor to build the residence, but Millett, from her own independent funds, actually purchased or caused to be obtained significant materials and furnishings. *Id*. She, and to her knowledge and understanding, Wheaton, did not believe that the metal warehouse/shop was included in the five-acre piece of land that was separated from the larger piece

5

of land. *Id*. Other than the five-acre parcel (the "Property"), Millett claims no interest in any other land owned by Wheaton and does not even have knowledge of all of his land holdings. *Id*. Upon information and belief gleaned from public sources, the alleged commercial growing site for marijuana (of which Millett had no knowledge) was on land owned by Wheaton not only separate from the five-acre parcel but on another piece of land miles away. *Id*.

Millett believed that she was listed as a co-owner of the separated-out five-acre parcel, referenced by the fact that she was listed by the Town of Standish for tax purposes as a joint party in possession (with Wheaton) of the house and land listed as Map 8, lot 9. *Id*. at 5. She and Wheaton alternated paying the semi-annual tax bills on the house and five-acre parcel of property on which the residence was constructed. *Id*. Millett and Wheaton moved into the residence in the spring of 1999, although the house was not finished. *Id*. Millett has lived in the residence since then and has continued to pay costs associated with the property. *Id*. On information and belief, corroborated by receipts and checks, she purchased or caused to be purchased materials used to build the house in excess of $100,000. *Id*. During this period of time Wheaton also paid some monies toward upkeep of the house, including some taxes and utility payments. *Id*.

In late spring of 2003 agents from the Drug Enforcement Agency came to the residence, which they searched pursuant to a warrant, and questioned Millett extensively as to whether she had any knowledge concerning drug-related activity by Wheaton. *Id*. She knew nothing about any such activities. *Id*. She cooperated completely with the United States, including testifying before the Grand Jury, and truthfully told the United States she had no knowledge of any drug activity engaged in by Wheaton at any location. *Id*. at 5-6. She was unaware of any illegal drug activity on the part not only of Wheaton but also of anyone in any way related to him or in any way related to any property she jointly owned or occupied with Wheaton or to any property owned by Wheaton or by any company

6

with which he was associated. *Id*. at 6. The Ross Wheaton she knew prior to his arrest was on the board of the church they attended, was elected to the local planning board and was not, to her knowledge and belief, involved in any illegal activity of any kind involving controlled substances. *Id.*

On the day of the execution of the search warrant Millett requested Wheaton leave the house. *Id*. She was never charged with any crime. *Id*. Wheaton has confirmed to her that she had no knowledge of, or involvement in, any illegal activity of his. *Id*. She has remained in the residence at 4 Wheaton Way and continues to live there at this time, paying costs associated with the residence and the five acres of land in issue. *Id*. After Wheaton was arrested in the spring of 2003 for federal drug violations, Millett learned that her name was not on the deed to the property that included the five acres and the residence. *Id*.

I also take into consideration the following evidence adduced by the government without protest from Millett, *see* Motion at 5; *see generally* Response to Government's Motion To Dismiss Petition of Rhonda Millett for Lack of Standing ("Response") (Docket No. 22), which does not contradict the averments of the Petition:

Wheaton and Excel Construction were the owners of record of any property owned by Wheaton in Standish as of April 1, 2005. *See* Exh. A to Motion.

### III. Analysis

The government seeks dismissal of Millett's third-party petition on the ground of failure to demonstrate either category of statutory standing, to wit: (i) a legal interest in the property superior to that of Wheaton at the time the interest of the United States vested through his commission of acts giving rise to the forfeiture or (ii) *bona fide* purchase without knowledge of the forfeitability of the property. *See* Motion at 3-8. The government posits that Millett is, at best, a general unsecured

7

creditor – a status that confers no standing to press a petition contesting criminal forfeiture of property. *See id*. at 8. Millett rejoins that the facts of her case, as alleged in her petition, neatly fit either category of statutory standing. *See generally* Response. She denies that she is merely an unsecured general creditor but notes, in passing, that courts have recognized standing in general creditors to challenge criminal-forfeiture orders. *See id*. at 2; Petition at 10 & n.6. Millett presents a sympathetic case; however, as other courts wrestling with this issue have observed, section 853(n)(6) aids only two narrow classes of claimants. *See, e.g., United States v. Kennedy,* 201 F.3d 1324, 1328-29 (11th Cir. 2000); *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991); *United States v. Antonelli*, No. 95-CR-200, 1998 WL 775055, at *1 (N.D.N.Y. Nov. 2, 1998). I agree with the government that, even accepting the truth of the averments of Millett's petition, it is clear as a matter of law that her circumstances fit neither category.

### A. Legal Interest in the Property

The question whether, for purposes of section 853(n)(6)(A), a petitioner has "a legal right, title, or interest in [] property" is answered with reference to state law. *See, e.g.*, *United States v. Nava*, 404 F.3d 1119, 1127 (9th Cir. 2005); *United States v. Certain Real Prop. Located at 2525 Leroy Lane*, 972 F.2d 136, 138 (6th Cir. 1992); *see also, e.g., United States v. U.S. Currency, $81,000.00*, 189 F.3d 28, 33 (1st Cir. 1999) (civil-forfeiture context). Millett posits that pursuant to Maine law, she is the beneficiary of a constructive trust that arose in her favor when Wheaton induced her to invest substantial sums in improvements to, and fixtures and furnishings for, the Property prior to the time his criminal activity conferred an interest in the Property to the United States. *See* Response at 5-6.

The government disputes that Millett has satisfied state-law requisites for the formation of such a trust, arguing, as a threshold matter, that she failed to avail herself of available legal remedies, a

8

condition precedent to establishment of a constructive trust (an equitable remedy). *See* Motion at 6. In particular, the government asserts, Millett could have either (i) sued Wheaton for the value of her alleged contributions or (ii) filed a petition for remission with the attorney general pursuant to 21 U.S.C. § 853(i). *See id*. Millett rejoins that (i) the government's argument is "circuitous" and "makes no sense" inasmuch as an "equitable" interest qualifies as a "legal" interest for purposes of section 853(n)(6) and, (ii) in any event, the filing of a remission petition in this case would not afford an "adequate" legal remedy inasmuch as the government has tipped its hand that it views Millett as "at most" a general unsecured creditor, and such creditors can gain no relief via remission petitions. *See* Response at 4-5.

The government has the better of the argument. It is true – as Millett points out, and the government evidently does not dispute, *see id*. at 4; *see generally* Motion – that the weight of authority holds that an "equitable" interest can qualify as a "legal" interest for purposes of section 853(n)(6), *see, e.g., United States v. BCCI Holdings (Luxembourg), S.A.*, 46 F.3d 1185, 1190 (D.C. Cir. 1995); *United States v. Schwimmer*, 968 F.2d 1570, 1582 (2d Cir. 1992); *United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987); *Strube*, 58 F. Supp.2d at 585; *United States v. Ribadeneira*, 920 F. Supp. 553, 555-56 (S.D.N.Y. 1996), *aff'd*, 105 F.3d 833 (2d Cir. 1997). Nonetheless, it is equally true that a whether a claimant has a cognizable interest in property for purposes of section 853(n)(6) is determined with reference to state law. *See, e.g., Nava*, 404 F.3d at 1127. Pursuant to Maine law, a constructive trust is classified as an "equitable remedy," *see, e.g., Corey v. Corey*, 803 A.2d 1014, 1017 (Me. 2002), and award of such remedies is conditioned on the unavailability of an adequate remedy at law, *see, e.g., McIntyre v. Plummer Assocs.*, 375 A.2d 1083, 1084 (Me. 1977) ("It is axiomatic that an equitable remedy such as specific performance will not be granted where there exists an adequate remedy at law or where an adequate legal remedy, once available, has been lost by the

failure of the party seeking equitable relief to pursue that remedy in a timely manner.") (citations omitted).[2]

I perceive no tension between the general recognition that claimants with equitable interests may be eligible to contest forfeitures of property pursuant to section 853(n)(6)(A) and the reality that individual petitioners will lack standing to do so for any number of reasons, one of which is availability of an adequate remedy at law. Indeed, as the government points out, *see* Motion at 6, at least one United States district court has held that a claimant asserting an equitable interest in property lacked standing to contest a forfeiture of that property when the claimant had available an adequate remedy at law, *see United States v. $79,000 in Account No. 2168050/6749900 at Bank of N.Y.*, No. 96 CIV.3493 (MBM), 1996 WL 648934, at *6 (S.D.N.Y. Nov. 7, 1996) (civil forfeiture context); *Ribadeneira*, 920 F. Supp. at 556 (criminal forfeiture context). Millett points to no cases holding to the contrary in a criminal-forfeiture context, *see* Response at 4, nor does my research disclose any.

The question remains whether Millett does have an adequate remedy at law. She is correct that, on the government's view of her case, a petition to the attorney general for remission cannot fairly be characterized as an "adequate" remedy inasmuch as claimants who are *merely* general unsecured creditors cannot file such petitions. *See* Response at 4-5; *see also, e.g., Casco N. Bank, N.A. v. Board of Trustees of Van Buren Hosp. Dist.*, 601 A.2d 1085, 1088 (Me. 1992) ("An adequate remedy is one that affords relief upon the very subject matter of the controversy. It must be fully commensurate with the necessities and rights of the party under all the circumstances of the particular case.") (citations and internal quotation marks omitted); 28 C.F.R. § 9.6(a) ("A general creditor may not be granted

---

[2] "A constructive trust may be imposed to do equity and to prevent unjust enrichment when title to property is acquired by fraud, duress or undue influence or is acquired or retained in violation of a fiduciary duty." *Thomas v. Fales*, 577 A.2d 1181, 1183 (Me. 1990) (citations, internal quotation marks and emphasis omitted). "Equity declares the trust in order that it may lay its hand on the thing and wrest it from the possession of the wrongdoer." *Sacre v. Sacre*, 143 Me. 80, 95-96 (1947); *see also, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) ("[F]or restitution to lie in equity, the action generally must seek not to
*(continued on next page)*

remission or mitigation of [civil or criminal] forfeiture unless he or she otherwise qualifies as petitioner under this part.").[3]

Nonetheless, the government also argues that Millett has an adequate remedy at law in the form of a suit against Wheaton to collect the value of monies invested in the Property. *See* Motion at 6. Millett, who bears the burden of demonstrating standing, *see, e.g., Strube*, 58 F. Supp.2d at 579, is conspicuously silent in response to this argument, *see* Response at 4-5. Inasmuch as she describes the "extent of [her] interest" as "either a dollar amount of funds contributed (plus the pro rata appreciation of the property value) or, under a partnership theory, fifty percent of the value of the five acre parcel and residence[,]" Petition at 12, it is difficult to discern how the legal remedy of damages would not suffice to make her whole or why, on the facts she sets forth, she would not have a cause of action directly against Wheaton for such damages. *Compare, e.g., Town of Bar Harbor v. Evans*, 499 A.2d 157, 158 (Me. 1985) ("Traditionally, the courts of equity have recognized that only an injunction can give completely effective relief against a public nuisance. For the public represented by the Town of Bar Harbor, it was an injunction or no real remedy at all.") (citations omitted). Millett therefore fails to demonstrate statutory standing based on her constructive-trust theory.

In her Petition, Millett offers a second basis for standing pursuant to section 853(n)(6)(A): the existence of a "possessory interest" in the Property "demonstrated objectively . . . by the actual purchase and continued possession of the home materials, furnishings and appliances" and by her listing on the tax rolls as a joint owner. Petition at 10-11. As the government points out, *see* Motion at

---

impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.") (footnote omitted).

[3] For purposes of the regulations governing the remission or mitigation of civil and criminal forfeitures, a "general creditor" is defined as "one whose claim or debt is not secured by a specific right to obtain satisfaction against the particular property subject to forfeiture." 28 C.F.R. § 9.2(g). To qualify as a "petitioner," one must be an "owner," a "lienholder" or a "victim" as those terms are defined in the regulations. *See id*. § 9.2(o). Millett has filed a motion for remission or mitigation, *see* Docket No. 29, and I intimate no view as to its merits. My determination that, for purposes of the instant motion, remission or mitigation offers no adequate remedy at law is based on acceptance at face value of the government's position that Millett is at most a general creditor.

5, the listing of an individual's name on a tax roll does not in itself confer a legal interest in property and does not necessarily mean that the person listed possesses such an interest, *see, e.g.,* 36 M.R.S.A. § 557. Indeed, in this case only Wheaton and Excel Construction are listed as owners of record of the Property. Nor, as the government suggests, *see* Motion at 7; Government's Reply to Petitioner Rhonda Millett's Response to Its Motion To Dismiss Her Claim for Lack of Standing, etc. ("Reply") (Docket No. 24) at 5, does the mere fact that Millett resides at 4 Wheaton Way establish a legal interest in the Property, *see, e.g., Antonelli*, 1998 WL 775055, at *1 (defendant's minor children had no legal interest in real property held solely in his name, and lacked standing to challenge forfeiture, even though property was their residence). Finally, as the government posits, *see* Motion at 7, the provision of building materials, fixtures and furnishings, standing alone, does not establish a vested legal interest in real property to be forfeited, *see, e.g., United States v. Schecter*, 251 F.3d 490, 495 (4th Cir. 2001) (petitioner's payment of expenses to improve property could not become lien against property pursuant to Maryland law unless he reduced reimbursement claim to judgment or obtained a lien by reason of some statute such as mechanics' lien law); *United States v. Nnaji*, No. 05-X-70120, 2005 WL 1049905, at *1 (E.D. Mich. Apr. 22, 2005) (petitioners who funded improvements to defendant's property, but did not record a lien against it, were unsecured creditors without standing to contest forfeiture of property; they instead had to await its sale to assert claim to portion of proceeds).

### B. *Bona Fide* Purchaser for Value

To establish statutory standing pursuant to section 853(n)(6)(B), a petitioner must show that he or she is "a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section[.]" 21 U.S.C. § 853(n)(6)(B). Millett contends that her purchases of construction materials, fixtures and furnishings conferred the requisite right, title or interest in the Property, *see*

12

Petition at 2, 12; the government argues that they did not, *see* Motion at 7-8. The government again has the better of the argument. As discussed above, the purchase or provision of materials used to improve a property (*e.g.*, building materials, fixtures, furnishings) does not, standing alone, convey an interest in the underlying real property.

Nor, as the government observes, did Millett purchase an interest in the Property from Wheaton – the kind of transaction envisioned by section 853(n)(6)(B). *See* Reply at 4-5; *see also, e.g., Lavin*, 942 F.2d at 187 ("Had WMOT . . . *purchased* some of Lavin's forfeitable property in good faith without knowledge of the government's interest in that property, it would have been entitled to keep it. But that is not what happened here; instead, WMOT . . . was a victim of Lavin's embezzlement. Because that 'transaction' (for want of a better word) does not qualify as a good-faith purchase for value under commercial law, WMOT's 'legal' interest in Lavin's forfeited property . . . remains inferior to that of the government, who . . . acquired its 'legal' interest in the forfeited property sometime beforehand.") (emphasis in original) (footnote omitted).

It is thus clear that, even assuming *arguendo* the truth of the averments of the Petition, Millett cannot qualify as a matter of law as a *bona fide* purchaser for value of right, title or interest in the Property pursuant to section 853(n)(6)(B).[4]

## IV. Conclusion

For the foregoing reasons, I recommend that the Motion be **GRANTED**.

---

[4] Millett emphatically denies that she can be characterized as a general unsecured creditor but notes in passing that such creditors have been found to have standing to challenge a forfeiture. *See* Petition at 10 & n.6. Assuming *arguendo* that Millett makes a bid for recognition of standing as a general, unsecured creditor, I agree with the government that, per the weight of better-reasoned authority, such creditors do not have standing to contest a criminal forfeiture. *See* Motion at 7; Reply at 4; *Strube*, 58 F. Supp.2d at 581 ("A general creditor can never have an interest in specific forfeited property, no matter what the relative size of his claim vis-à-vis the value of the defendant's post-forfeiture estate. Were it otherwise, the court litigating the forfeiture issue would be converted into a bankruptcy court and would not be able to grant forfeiture to the government until it determined that no general creditor would be unable to satisfy its claim against the defendant.") (citation and internal quotation marks omitted); *see also, e.g., United States v. Campos*, 859 F.2d 1233, 1235-40 (6th Cir. 1988); *Perkins*, 2005 WL 1595287; *Schwimmer*, 968 F.2d at 1581; *Ribadeneira*, 920 F. Supp. at 555.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of September, 2005.

/S/ David M. Cohen
David M. Cohen
United States Magistrate Judge